114-1000 Federal-Mogul v. Edgar Castellanos Good morning, Your Honors. May it please the Court. Your Honor, I'm before you this morning on behalf of Mr. Edgar Castellanos. Pitching over the brief, we tried this case before an arbitrator who felt that there was no causal connection, and there were other issues that she found were relevant to deny benefits to this petitioner. I filed a review before the Commission was argued, briefed, and the Commission, in approximately a four-and-a-half-page decision, reversed the arbitrator, laying out reasons, findings, and so on to support the position that this man was, in fact, entitled to benefits, that he suffered an injury, and awarded benefits as we asked. This, then, was taken across the street by the respondent. A review was filed before the judge, Judge Shapiro. The case was briefed and argued, and we were advised that the Court would take it under advisement. And as you can see in the brief, time passed. This was a 19B. My client was in need of surgery, and that was one of the key issues in this case. And as we all know, when we're dealing with spinal maladies, time is of the essence to a certain degree. After four months or so had passed, Counsel and I joined in a motion before the Court just to determine if there was additional issues that needed to be briefed, whether further argument would be appropriate, or if there was some other impediment to issuing decision. Thereafter, shortly thereafter, the judge reversed the Commission, proceeded to make findings on the evidence, and summarily reinstated the decision of the arbitrator. Now, you're not going to suggest to us that the Circuit Court usurped the role of the Commission, are you? I'm going to suggest, as I did in my brief, that the judge became the fact-finder. Which you can't become the fact-finder. We know that, right? Correct. So it is my position this morning... Don't feel lonely. This is the fourth in this city with the same judge with the same argument. Since I still am looking forward to practicing law for a few more years, I will defer any responses. Because you know you're being recorded. So, Your Honors, I think it's clear through my brief, and I won't bore you. You've heard me three times already this week. Four could be a curse. It is my belief that this matter should be reversed, find error in the judge's conclusions and his method in reversing this case, and reinstate the Commission's decision. Do you have any questions? I don't believe there are. I'll reserve. Should I have five minutes to reply? Thank you. Responses? Please. Representative Gordon, Mr. Alexie. I don't take any disagreement at all with the procedural history that Mr. Alexie just went through. The question becomes, when one looks at the totality of the evidence which had been submitted to the Workers' Compensation Commission, is it clearly evident that the plain and undisputable weight of the evidence compels a decision that says the Commission decision was an error? Based on what? Well, I have tried to make some sense out of the Commission decision, and frankly, I can't. They look at a doctor, and the doctor which they rely upon, Dr. Ghanayem, says, this gentleman comes to me complaining about an episode in which he felt a popping in his neck, and he does something on a bagging machine, and as such, because I understand of the time components. In other words, when he comes to me, when he articulates that the problem has developed, that there must be a relationship. And I submit that the role of the Commission and the role of the Court is to say, is there a logical, clearly justifiable position which explains why you adopt Dr. Ghanayem's opinion over Dr. Butler? Did they have to articulate specifically why they did? Sure. Really? Well, I don't believe there's a – I don't believe, for example, that one can sit back and say, there's two doctors in the hypothetical case, and one's an allergist and one's an orthopedic surgeon, and we're adopting the allergist when, in fact, the parties involved in litigation and the role of the reviewing court is to say, is the decision of the Commission justifiable? It's important to remember that the history that Dr. Ghanayem received was that this individual felt a popping episode while he was doing some event, okay, a specific trauma. But that's not the theory that the case was tried on. The case was tried on a cumulative or repetitive trauma. When you asked the petitioner, Mr. Castellanos, did you tell the doctor about your actual job duties? No. Did you actually tell him, for example, that you were able to sit and stand at your own pace? No. Did you, in fact, advise the doctor that you ride motorcycles and, you know, and to ride a motorcycle your hands are extended? Absolutely not. And so what you have is a doctor, Dr. Ghanayem, which the petitioner freely admitted he was sent to by his attorney, and then you have another doctor who was provided not only all the medical records, but a job video, a job analysis, specific information about the actual performance of the job, and more importantly, the video of this individual riding the motorcycle. And for the Commission to draw any sort of inferences that says, well, we believe Dr. Ghanayem, I cannot find in the decision, and neither could the circuit court, any explanation as to what the repetitive trauma was that the individual was experiencing, when it manifested itself, and were those activities so pronounced that they could have caused a repetitive type of injury to the survivor? The claimant testified, did he not, that his job duties required him to be in a continuous motion all day. He's on the accident report and said he had to consistently stretch to get the button on the bagging machine. So you're saying there's no evidence of any continuous motion? Correct, because he also acknowledged that he could stand, he could sit, he could take breaks. There was nothing continuous about it. He was sitting at a station with a button that he says he had to stretch for, and one could draw whatever conclusions one had to, but there was no overhead. There was nothing that said that I'm moving my cervical spine. I'm sitting in an ergonomic chair. I can stop. He's never been written up for any sort of discipline for not working at a pharmacy. But did he not testify he was in continuous motion all day? Did the claimant testify as to that? He testifies, Your Honor, that I'm in continuous motion, except on further questioning he acknowledged that it was in continuous all the time. But why can't the commission believe him that he was in continuous motion all day? Well, Your Honor, I'm in continuous motion for what? I can sit down as you do, and you sit down and in your scholarship you are using your pen and you're reading all day. You're in continuous motion with your hand. That doesn't mean that you have a cervical problem. Yeah, but he's testified he's got to consistently stretch to get the button on the bagging machine. He's stretching, he's stretching forward. He's not moving his neck. I mean, the one doctor that they rely upon, Dr. Ganihim, has never presented any information at all as to the factual determinations or episodes of where he's sitting, what his body mechanics are, how fast he has to work. He simply told this man's working on a bagging machine, and he felt a pop in his neck. He doesn't know anything at all about the other activities that he was doing or the pace that he's working at. The commission, in its decision, makes what I would call a gratuitous comment in which they say it's in their language, basically says, well, because he had a prior back problem, the commission notes that he's more susceptible to having cervical problems. There is nothing in the record to support that finding of fact. As long as we're talking about alleged deficiencies with the opinions of the doctors, didn't the commission note that with regard to Dr. Butler, his opinion as to causation was based on his belief that the claimant waited two months before he ever reported the injury? The commission noted the claimant informed his supervisor of the accident soon after it happened. He informed his supervisor right after it happened of the accident. So you've got Butler's opinion based on a false premise, right? If he reports, it is a report consistent with what he tells Dr. Gnayem that he felt a pop while he was working here. You're missing the point. You're pointing out alleged deficiencies in Gnayem's opinion, and the commission says, hey, wait a minute. Butler's opinion was based on a false premise that he waited two months to report the accident, correct? I think the accident report form was filled out in August by the claimant, and the accident took place in June. But the accident that you refer to, Your Honor, is a specific traumatic event, not the theory that the claimant tried his case under. You're ducking the question. I'm not, Your Honor. I apologize if that's the way it's coming off. Butler believed that he waited two months, the claimant waited two months to report the injury, and that didn't happen according to the commission's findings. Let me ask a question about that. What is the deal on a doctor taking that into consideration in determining whether or not there's causation, the fact that he didn't report it until later? I mean, is that something a medical doctor should rely on? Right. And he says he finds it significant. I mean, that's the main reason he finds no causal connection. I would submit that's not the main reason why he finds no causal connection. He said, let's see, I find the delay in reporting the injury to be significant in finding no causal connection. Is that something doctors reasonably rely on in making medical decisions? Sure. I believe the doctor says that if an individual who feels a pop in one's neck, okay, if in fact it had occurred or if in fact was so debilitating, one would seek out immediate medical attention. That doesn't go to causation. That goes to accident. That's true. It's not causation. It's accident. If it's so significant that it would cause this pain, then he had to have the pain or it didn't happen. So, I mean, it goes to accident. It doesn't go to causation. Second of all, Ghanaian never gave an opinion that there was no causal connection. Pardon me, Butler. He never gave an opinion there was no causal connection. He said he couldn't say beyond a reasonable degree of medical certainty that there is a causal connection. That's a little different than saying there isn't one. I believe, Your Honor, the facts that were presented to Dr. Ghanaian. I'm only giving you his quotes, sir. I'm close. Cannot, quote, say beyond a reasonable degree of medical certainty that there is a causal relationship. Is that a little bit different than saying there isn't one? It is different, except, Your Honor, the accident for which Dr. Ghanaian is talking about and rendering an opinion on causal connection. I'm just talking about Butler right now. And I was going to say Dr. Butler, okay? There are two different understandings of the theories, okay? You have Dr. Butler who is being provided not only a job analysis in the job duties, but, in fact, has talked to the claimant and observed him outside of the work activities. He's addressing, I believe, both the cumulative trauma and a specific event. Dr. Ghanaian is only addressing a specific traumatic event, i.e., on this date, a date certain I felt a pop in my neck. As it turns out, the individual wasn't even working that day. It's amended later on at arbitration to put a different date of accident. And so for the commission, Your Honor, to say we accept Dr. Ghanaian's opinion, Dr. Ghanaian nowhere addresses the issue of did this individual have repetitive activities such that are greater than what we all have in everyday life. It's not as if he's lifting 50 pounds or 90 pounds. The parts that he's lifting weigh in between an ounce and a pound, okay? He's seated. He can stand. He can do whatever he wishes to do. He's got a special chair. He's supposed to fill 200 bags an hour. Are you telling us the general public does that 1,600 bags per shift? I can't tell you if the general public does that. The answer is obviously no, okay? But he further also testifies to, well, that's a goal set for the department. I was not forced to do that. He acknowledges 100 bags a shift. I mean, you know, the idea that that's something the general public does. But you're right, okay? An individual who has a bag right in front of him, who puts a part into it and has to drop it into his shoe, okay? Again, we're talking about hand movements. We're not talking about neck movements. And whether, Your Honor, you believe that that's a repetitive activity greater than the general public, the doctor that the commissioner was relying upon never addresses that theory. He addresses and simply says, as noted earlier, this individual comes in with a complaint of a specific event of a popping of his neck. And because of the time frame that the petitioner testifies to, i.e., my symptomology developed after that episode, Dr. Ghanayim says it's related. But yet Dr. Ghanayim doesn't know about the cumulative trauma. He says, everything you're talking about goes to weight. Everything you're talking about goes to weight. We don't do weight here. Enough. We know it's a fiction that we don't do weight when manifest weight is actually our standard of review. I mean, it's kind of non-sequitur. But the fact of the matter is the commission determines what weight to be given to the evidence. And they know what Ghanayim knew. They know what he testified to. And yet they found the petitioner credible when he said that he was in continuous motion all day. They also found him credible when he said he constantly had to stretch to reach buttons. And they accepted Ghanayim's opinion. And I believe, Your Honor, the issue of which doctor to pick goes beyond the deference to the commission of their expertise. Goes beyond weight. It does not go beyond weight. Well, it doesn't. Ghanayim didn't, to steal one of the phrases that I like to use a lot, Ghanayim didn't rest his opinion based on his consultation of the entrails of chickens, did he? So you can't knock him out because he's just totally ludicrous. So now you've got a situation where it's weight. Except, Your Honor, it's not. It goes beyond the deference to the commission when the theory of causal connection is not the theory for which the doctor they are relying upon is incorrect. Dr. Ghanayim, if you're going to give deference to the commission on the issue of weight, how can we give any weight at all to Dr. Ghanayim when he doesn't address the issue for which the case is tried? That is a cumulative repetitive trauma. Nor, importantly, is he given any information by the claimant of other activities which occurred in that seven-month period of time between the accident in June and when he started seeing them. They all would have been a great, great reason for the commission to reject his testimony. But they didn't. They accepted it. Now, you've got Butler, who really hasn't given an opinion that it wasn't reasonably, he just said he couldn't say with a reasonable degree of medical certainty it was. But it occurs to me that we're required to give deference to them because we have to operate under the fiction that they're experts in these medical fields, that they deal with on a daily basis. Now, we know that's a fiction, but by law we're required to engage in it. Yes, you are. But the reality comes into it that you still have the duty, and you have exercised it on other cases, that when the totality of the evidence defies a clearly undisputable weight that should be given to the evidence, you will step in. You also cite to the Cook case that we have to give this extra deference to an arbitrator's finding. That case has been repudiated how many times? And I'm not saying you need to give any extra deference. You said it was brief. I suggested that, in fact, maybe it's a time to delineate whether or not Cook is or is not good law. But that aside, how can we sit back and say we give deference to a commission and to their expertise when the doctor that they're relying upon doesn't know all the facts, doesn't know at all that it's accumulative trauma? Well, you've got the same problem with Butler. He thinks that he hadn't reported for two months. That it's a failure? You've never answered that question. That it's a failure of proof, Your Honor. I don't have – it's a question of who has the basis. Wait a minute. Hold on one second. If you were to discount Butler because his whole basis for saying no cause of connection was that there was a delay and there was no delay, and you discount Kanian, there's no requirement that this man have any medical evidence to establish causation to begin with. He's testified to what he does for work, what his hand motions are, where he sits, why he doesn't sit on the front of the chair like the woman did or whatever in their video. And the commission turns around and says, yeah, we think that injury is causally related to that type of behavior. Which injury, Your Honor? I mean the repetitive trauma. But it's a repetitive trauma to the neck. He's saying I'm using my hands. He's saying I ride a motorcycle. Do you have any empirical data that says that you cannot suffer an injury to your neck because you've used your hands? Other than your logic. I can do – within the record, there's nothing within the record. No, there isn't. It's a problem, isn't it? So now the question – It isn't a question of failure of proof? No, because the commission had – they knew what he did, they knew what his injury was, and they say there is a causal connection. Okay. I guess the question becomes, how can one have confidence that the commission is exercising their expertise if, in fact, they don't articulate what the repetitive activities are and whether or not the doctor was made aware of it? Again, you're there relying on Gnanium, and Gnanium doesn't address the issue. I'm saying you can't discount Gnanium. So then what you have is a fact in giving the claimant, Mr. Costello, the benefit of the doubt. I sit, I put an object into a bag, I stretch with my hands on the desk. And I feel a pop in my neck. But the pop in the neck is a specific traumatic event, and that's not what he's alleging. Counsel, your time is up. I think you do understand your position. Thank you. Counsel, you may reply. If it pleases the court, I really can't add anything to what I've already addressed. If there's any questions. I don't believe there are. Thank you, Your Honors. We appreciate it. Thank you, counsel, both for your arguments in this matter this morning. We'll take an advisement written disposition shall issue.